

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
Feb 4. 2010
FEB 4 2010
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 1015-1 |
| vs. | ) | Judge Harry D. Leinenweber |
| | ) | |
| ANTWAN DAVIS | ) | |
| aka "Twan," and "Bugga Bear," | ) | |
| | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ANTWAN DAVIS, and his attorney, PAUL FLYNN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with knowingly and intentionally distributing a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) (Counts One and Two).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment.  Count One charges defendant with knowingly and intentionally distributing a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about April 8, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, ANTWAN DAVIS knowingly and intentionally distributed and aided and abetted the distribution of a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine ("crack cocaine"), a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

Specifically, in the days prior to April 8, 2008, DAVIS had a series of telephone conversations with an individual ("CS1") who, unbeknownst to DAVIS, was cooperating

with law enforcement. During these conversations, DAVIS agreed to supply CS1 with 4½ ounces of crack cocaine for $3,300.

On April 8, 2008, at approximately 1:00 p.m., CS1 placed a phone call to DAVIS. During this call, DAVIS agreed to meet CS1 at the address of one of DAVIS's relatives. DAVIS further called Marco Smith, and Smith agreed to supply DAVIS with the powder cocaine and assist DAVIS with cooking the powder cocaine into crack cocaine. DAVIS and CS1 subsequently met inside a vehicle near the intersection of 15th Street and South St. Louis in Chicago. DAVIS asked CS1, "You got the money so I can give it to [Smith]?" DAVIS also stated that another person ("Individual A") was "gonna make us like back a four and a split deal [four and one-half ounces of crack cocaine]."

Later that day, CS1 met with DAVIS and provided DAVIS with $3,300 to purchase powder cocaine that was going to be cooked into crack cocaine. DAVIS and CS1 drove to meet Smith, and DAVIS gave Smith $3,300 in order to purchase the powder cocaine. During their meeting, Smith instructed DAVIS to obtain a pyrex dish, some baking soda, and a scale in order to cook the powder cocaine into crack cocaine. Shortly after the meeting, DAVIS and CS1 purchased the pyrex dish and baking soda from a nearby department store. DAVIS and CS1 then drove to the vicinity of the 1400 block of S. St. Louis Avenue in Chicago, where they entered a residence.

Smith met DAVIS and CS1 at the residence, along with two Individuals ("Individuals A and B") who Smith brought with him to assist with the cooking process. While Individuals

A and B were cooking the powder cocaine into crack cocaine, Smith watched and commented on the quality of the crack cocaine that Individuals A and B were making, stating that "[I]t's still potent . . . that's good crack there, man . . . you better all learn how to cook it." DAVIS subsequently stated, "That shit [referring to the crack cocaine] hard as a brick." Smith further stated, "That shit [referring to the crack cocaine] do look good, though." After Individuals A and B finished cooking the crack cocaine, they weighed it with a scale. CS1 took the crack cocaine, which consisted of approximately 150.1 grams, gave approximately one ounce of it to DAVIS, and kept the rest. Additionally, Smith gave approximately $100 to DAVIS as DAVIS's payment for arranging the purchase.

7.    Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

(a)    On or about April 16, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, DAVIS and Leonard Harris, also known as "Cornbread," knowingly and intentionally distributed and aided and abetted the distribution of a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

(b)    Specifically, on April 16, 2008, DAVIS had a series of telephone conversations with CS1 and agreed to supply CS1 with 4½ ounces of crack cocaine for

4

$3,300. DAVIS called Smith, who agreed to supply the powder cocaine for CS1's purchase. DAVIS and CS1 met Smith in a parking lot, at which time DAVIS gave Smith the money that DAVIS had just received from CS1. In exchange for the $3,300, Smith gave powder cocaine to DAVIS. Smith also told DAVIS that Smith did not have anyone available to assist in cooking the powder cocaine into crack cocaine.

DAVIS and CS1 then drove to the area of 16th Street and Lawndale in Chicago. DAVIS asked Harris if Harris would be willing to cook the powder cocaine into crack cocaine, stating, "Cornbread, cut this cocaine for me real quick." Harris asked DAVIS what DAVIS wanted, and DAVIS said, "Four and a split [four and one-half ounces of crack cocaine." DAVIS further stated, "I know you know how to cook it. This shit [cocaine], it's good as a motherfucker." Harris agreed to cook the powder cocaine into crack cocaine in exchange for $150.

DAVIS, HARRIS, and CS1 then went to the vicinity of 1400 S. St. Louis Avenue and entered a residence. DAVIS and CS1 later paid Harris approximately $150 in exchange for HARRIS's assistance for cooking the powder cocaine into crack cocaine. CS1 weighed the crack cocaine, which consisted of approximately 157.3 grams, gave DAVIS approximately one ounce of the crack cocaine, and kept the rest.

(c)     In addition, on or about June 10, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, DAVIS and Clinton Brownlee knowingly and intentionally distributed a controlled substance, namely, 50 grams or more of

mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

(d)     Specifically, on June 9 and 10, 2008, DAVIS had a series of telephone conversations with CS1 and agreed to supply CS1 with 4½ ounces of crack cocaine for $3,000. Thereafter, on June 10, 2008, DAVIS met with CS1 in the vicinity of 15th Street and St. Louis Avenue in Chicago. DAVIS agreed to supply CS1 with crack cocaine in exchange for approximately $3,000, which CS1 provided to DAVIS that day. DAVIS then met with Individual C and obtained the crack cocaine in exchange for approximately $1,600 or $1,700. DAVIS also contacted Brownlee, and they subsequently met at a residence in the 1400 block of S. St. Louis Avenue, where DAVIS paid Brownlee approximately $300 to re-cook the crack cocaine, so that it was better quality. Thereafter, DAVIS again met with CS1 and provided CS1 with approximately 157.3 grams of crack cocaine.

8.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

9.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

6

a.      A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years.  Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense.  This offense also carries a maximum fine of $4,000,000.  Defendant further understands that the judge also must impose a term of supervised release of at least five years and up to any number of years including life.

b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

10.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2009 Guidelines Manual.

7

b.  **Offense Level Calculations.**

i.  The amount of mixtures containing cocaine base in the form of crack cocaine involved in the offense, including relevant conduct for which the defendant is accountable is 435.7 grams, which is more than 150 grams but less than 500 grams. Therefore, the base offense level is 32, pursuant to Guidelines §§ 2D1.1(a)(3) and (c)(4).

ii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 15 and defendant's criminal history category is VI:

i.      On or about January 13, 1992, defendant was convicted, as a juvenile, of possession of a controlled substance in the Circuit Court of Cook County, and sentenced to probation.  Pursuant to Guideline § 4A1.1(c) and 4A1.2(d)(2)(B), defendant receives zero criminal history points for this conviction.

ii.      On or about May 10, 1994, defendant was convicted, as a juvenile, of possession of a controlled substance in the Circuit Court of Cook County, Case No. 94CR1056601, and sentenced to 2 years' probation.  On or about September 20, 1994, defendant was found to have violated his probation and was sentenced to 20 days in Cook County Department of Corrections ("CCDOC") and 2 years' probation.  On or about February 7, 1996, defendant was found to have violated his probation and was sentenced to 1 year in the Illinois Department of Corrections ("IDOC"), which sentence was to run concurrent with the sentence imposed in Case No. 95CR3327101.  Pursuant to Guideline § 4A1.1(b) and 4A1.2(d)(2)(B), defendant receives zero criminal history points for this conviction.

iii.      On or about February 7, 1996, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Case No. 95CR3327101, and

sentenced to 1 year in IDOC, to run concurrent with the sentence imposed in Case No. 94CR1056601. Pursuant to Guideline § 4A1.1(b) and 4A1.2(e)(3), defendant receives zero criminal history points for this conviction.

iv.      On or about September 10, 1996, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Case No. 96CR1272701, and sentenced to 4 years in IDOC. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

v.      On or about May 8, 1997, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Case No. 97CR473501, and sentenced to 2 years in IDOC. Pursuant to Guideline § 4A1.1(a), defendant received three criminal history points for this conviction.

vi.      On or about September 8, 1997, defendant was convicted of disorderly conduct in the Circuit Court of Cook County and sentenced to 8 days in jail. Pursuant to Guideline § 4A1.1(c) and 4A1.2(e)(3), defendant receives zero criminal history points for this conviction.

vii.      On or about March 7, 2000, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Case No. 99CR1184501, and sentenced to 3 years in IDOC. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

viii.    On or about January 7, 2005, defendant was convicted of manufacture/delivery of a controlled substance in the Circuit Court of Cook County, Case No. 02CR3038301, and sentenced to 8 years in IDOC.  Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

ix.    Defendant committed the instant offense of conviction while under a criminal justice sentence, namely the parole imposed following defendant's January 7, 2005 conviction for manufacture/delivery of a controlled substance described in Paragraph 10(c)(viii) above.  Pursuant to §4A1.1(d), two criminal history points apply.

x.    Defendant committed the instant offense of conviction less than two years after release from imprisonment on a sentence counted under §4A1.1(a), namely defendant's January 7, 2005 conviction for manufacture/delivery of a controlled substance described in Paragraphs 10(c)(vii) above.  Pursuant to §4A1.1(e), one additional criminal history point applies.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 29, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 151 to 188 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.  Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

11

e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

12.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.  This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding.  Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation.  If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below.  Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

14.     If the government moves the Court, pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C).  That is, the parties have agreed

that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guidelines range or 66 percent of the statutory minimum sentence, whichever is greater. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

15.   If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

16.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $9,300 as compensation for government funds that defendant received during the investigation of the case.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     The government agrees not to file an information against defendant pursuant to Title 21, United States Code, Section 851 seeking enhancement of defendant's sentence on the basis of a prior conviction for a felony drug offense.

19.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 1015-1.

21.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be

16

conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

17

be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to

18

challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. Finally, if the Court imposes a term of imprisonment that is at or below the number of months that equals 66 percent of the low end of the advisory Guidelines range that would apply if the crack cocaine quantity in this case were treated as powder cocaine, defendant waives his right to subsequently seek a reduction of sentence based directly on a change in law as it relates to the crack cocaine/powder disparity that may be applicable to defendant, even if the change in the law is made retroactive by an Act of Congress, by the Supreme Court, or by the United States Sentencing Commission acting pursuant to Title 18, United States Code, Section 3582(c)(2) or pursuant to any other authority. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

      c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall

fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be

20

sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

21

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____2/4/2010_____


_____
PATRICK J. FITZGERALD
United States Attorney

_____
CHRISTOPHER R. MCFADDEN
Assistant U.S. Attorney


_____
ANTWAN DAVIS
Defendant

_____
PAUL FLYNN
Attorney for Defendant


22